**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| In re | CV 16-113-M-DLC |
| STEVEN VINCENT SANN, | |
| Debtor. | ORDER |
| Christy L. Brandon, | |
| Plaintiff and Appellee, | |
| vs. | |
| MICHAEL J. SHERWOOD and Michael J. Sherwood, P.C., | |
| Defendant and Appellant. | |

Appellant Michael J. Sherwood ("Sherwood") and his law firm Michael J. Sherwood, P.C. (together "Appellants") appeal the judgment entered against them by the United States Bankruptcy Court for the District of Montana[1] in favor of the Plaintiff/Trustee Christy L. Brandon ("Trustee") for the Chapter 7 estate of Steven Sann ("Sann"). The Trustee brings this action to collect $53,532 in funds transferred to Sann from an IOLTA trust held by Sherwood on Sann's behalf.

---

[1] At the time of this proceeding, the Hon. Chief Judge Ralph B. Kirscher was still on the bench. He recently retired and is succeeded by the Hon. Benjamin P. Hursh, Chief Judge.

These funds were subject to an asset freeze, though Sann retained an allowance of $17,844 for living and business expenses. The funds at issue are three monthly draws, distributed after the case was converted under Chapter 7 of the Bankruptcy Code. The Trustee contends that the funds were property of the estate, and the Chapter 7 conversion prohibited Sherwood from making these transfers. Appellants argue these transfers were proper because the IOLTA trust was not property of the estate subject to the bankruptcy proceedings. Judge Kirscher determined the funds were estate property, improperly transferred, and entered judgment in favor of the Trustee. This appeal follows. This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1). For the reasons stated below, this Court affirms Judge Kirscher's ruling.

## FACTUAL BACKGROUND[2]

This case arises from the juncture of a civil action against Sann by the Federal Trade Commission ("FTC") and Sann's subsequent bankruptcy. On January 8, 2013, the FTC filed a civil complaint against Sann and his related business operations seeking injunctive and equitable relief. The Complaint alleged Sann had engaged in deceptive business practices referred to as

_____

[2] Judge Kirscher provided a thorough factual background of this case in his Memorandum of Decision. (Doc. 1-3.) As such, this Court will only repeat the facts necessary to understand this decision.

"cramming;" the unauthorized addition of charges onto a consumer's monthly telephone bill, in violation of 15 U.S.C. § 45(a). The Complaint alleged the scheme netted profits of more than $26 million, and cost consumers more than $70 million.

The Court entered a Stipulated Preliminary Injunction ("SPI") freezing Sann's assets pending the outcome of the FTC litigation. The SPI had a carve-out provision allowing Sann to receive $17,844 per month to pay his mortgage, personal and business expenses. Sann's attorney, Appellant Michael J. Sherwood, received permission from the FTC to take possession of $648,352.20 from the sale of an apartment complex and distribute monthly draws from these funds. Sherwood placed the proceeds in an IOLTA trust and began issuing the monthly draws in November 2014.

Unrelated to the FTC litigation, Sann and his wife, Terry Sann, filed for bankruptcy under Chapter 11 in late September 2014. As residents of Nevada, they filed in Las Vegas. On the bankruptcy schedules the Sanns listed numerous accounts, including one ending in 6474. They included the money held in the IOLTA trust, claimed no exemptions, and listed the SPI's allowance of $17,844. On the Statement of Financial Affairs, the Sanns listed the pending FTC action.

In December, the FTC successfully transferred the case to the District of Montana, and Sherwood became involved in the bankruptcy case as well. In March, the United States Trustee filed a motion to convert the bankruptcy case under Chapter 7. The FTC joined the motion to convert, while the Sanns opposed it. At a hearing, the FTC's counsel stated that if a trustee were appointed to oversee all assets, the FTC would stipulate to Sann's request to modify the freeze.

The Court converted the case under Chapter 7, appointing Brandon as the Trustee. From the date of conversion, Sann was no longer entitled to draws from the IOLTA trust. Sherwood was sent official notice of the conversion, but stated he "was not up to speed on bankruptcy law" at the time. (Doc. 3 at 9.)

The day following the Trustee's appointment, Sherwood sent Sann a check for $17,844. Sherwood made two further transfers, on June 2 and July 1.

During this time, Sherwood was advised not to continue paying the monthly draws. In mid-May, Sherwood received an email from the Sanns's Nevada bankruptcy attorney, Samuel A. Schwartz ("Schwartz"), stating they should attempt to carve-out funds for Sann's FTC defense, but that "[otherwise], [he did not] believe there [was] a basis to object to the Chapter 7 trustee holding the funds." (Doc. 3 at 10.) Sherwood testified that the Sanns's Montana bankruptcy attorney, James A. Patten ("Patten"), told him not to make any further transfers

from the trust. Sherwood did not share Patten's opinions, and continued to send the monthly draws, fearing he would be held in contempt if he failed to comply with the SPI.

In early June, the Trustee sent Sherwood a demand to turn over the remaining funds in the IOLTA trust. In mid-June, the Trustee sent Sherwood a demand letter stating that the trust funds were property of the estate. Sherwood disagreed that the funds were property the estate, and informed the Trustee he would continue to pay the monthly draws according to the SPI. The Trustee then filed a motion for turnover in the bankruptcy case. While the motion was pending, the Trustee filed a Complaint against Sherwood citing violations of 11 U.S.C. §§ 542 and 543. As a result of the litigation, coupled with advice from Patten, Sherwood decided not to issue the August 1 payment.

On August 4, the Bankruptcy Court granted the Trustee's motion for turnover, ordering Sann to transfer to the Trustee all funds in the IOLTA trust as of the date of conversion, which was April 29. This demand included the request for $626.05 from account 6474. In addition, the Bankruptcy Court ordered the turnover of $53,532 for the three disbursements paid by Sherwood after conversion, deeming these funds property of the bankruptcy estate.

Sann complied in part, turning over $80,248.75 from account 6474. The Trustee credited that transfer against her demand, including account 6474. The Trustee did not apply any of the funds towards the $53,532.

As a result of the Bankruptcy Court's order and a related hearing, Sherwood mailed the remaining funds, $487,756.20, to the Trustee and asked the Trustee to dismiss the adversary proceeding. The Trustee declined, seeking to enforce the $53,532 against Sherwood under § 542(a). Trial was conducted and judgment was entered for the Trustee.

## LEGAL STANDING

When considering an appeal from a bankruptcy court, a district court applies the same standard of a review that a circuit court would use in reviewing a decision of a district court. *See Ford v. Baroff (in re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). A district court reviews a bankruptcy court's legal conclusions de novo and factual findings for clear error. *In re Leavitt*, 171 F.3d 1219, 1222 (9th Cir. 1999) (citations omitted). Mixed questions of fact and law are reviewed de novo. *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004). While the determination to award equitable relief is reviewed for abuse of discretion. *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1014, n.4 (9th Cir. 2010); *King v. Stanton (In re Stanton)*, 38 B.R. 746, 751 (B.A.P. 9th Cir. 1984).

DISCUSSION

Appellants raise two issues on appeal and argue that Judge Kirscher erred by (1) finding that the $53,532 transferred from the IOLTA trust was property of the bankruptcy estate and not exempted; and (2) rejecting Appellant's equitable defense of double recovery upon finding that Sherwood failed to heed the warnings of the Bankruptcy Court and bankruptcy counsel instructing him to cease distributing the monthly draws.  This Court will address these issues in that order.

## I.      Property of the Bankruptcy Estate

The commencement of a bankruptcy case creates an estate as a matter of law.  11 U.S.C. § 541(a).  The estate is comprised of "all legal or equitable interests of the debtor . . . wherever located and by whomever held."  *Id.*  Estate property is broadly construed and includes "[a]ny interest in property that the estate acquires after the commencement of the case."  § 541(a)(7); *United States v. Whiting Pools*, 462 U.S. 198, 204–05 (1983).  Thus, property "is not outside of [the estate's] reach because it is novel or contingent or enjoyment must be postponed."  *Harsh Investment Corp. v. Bialac (In re Bialac)*, 712 F.2d 426, 431 (9th Cir. 1983).  This includes property to which the debtor has a future interest.

The policy of the Bankruptcy Code is to promote inclusion to maximize a creditor's distributions.  *In re McCullogh*, 259 B.R. 509, 518 (Bankr. D.R.I. 2001).

However, property can be excluded from the estate under various provisions.

Section 541(c)(2) is such a provision and exempts valid state spendthrift trusts and

ERISA approved pension plans. *Patterson v. Shumate*, 504 U.S. 753, 760 (1992).

Appellants argue that the $648,352.20 recovered from the sale of an

apartment complex owned 99% by Sann is subject to exclusion from the

bankruptcy estate under § 541(c)(2). They argue the exclusion applies because the

property was held in an IOLTA trust on Sann's behalf, and like spendthrift trusts,

the SPI's asset freeze placed a restriction on those funds. Judge Kirscher

disagreed and determined the property was not exempted and fell under the broad

scope and plain meaning of § 541(a).

On appeal, this Court is asked to consider whether the SPI created a valid

spendthrift trust, precluding the bankruptcy court from exercising jurisdiction over

those funds. For the reasons cited below, Judge Kirscher's ruling is affirmed.

## A.    The IOLTA funds were included within the broad scope of 541(a)

This Court concludes that the three distributions totaling $53,532 fall within

the meaning and scope of "property of the estate." 11 U.S.C. § 541(a). Section

541(a) provides the "estate is comprised of all of the following property, wherever

located and by whomever held: . . . all legal or equitable interests of the debtor in

-8-

property as of the commencement of the case." *Id.* Property is broadly construed, includes future interest, and contingent property rights. *Harsh Investment Corp.*, 712 F.2d at 431.

The rights maintained by Sann in the IOLTA trust fall within the plain meaning of estate property within the Bankruptcy Code. The funds were obtained from the sale of an apartment complex owned 99% by Sann. They were held in an IOLTA trust on Sann's behalf with the FTC's consent. This Court placed the funds under an asset freeze to preserve the status quo while the FTC action was pending. Pursuant to the SPI, Sann maintained a right to monthly draws for living expenses. These draws are not per se excluded from the definition of estate property because they were held by Sherwood and not yet deposited into Sann's bank account. For these reasons, this Court finds that the monthly draws fall within the broad definition of estate property for the purposes of § 541(a), unless an exception applies.

## B.     The IOLTA funds are included in the estate because the SPI does not constitute a valid spendthrift trust

Section 541(c)(2) excludes from the estate an interest in a plan or trust that contains a transfer on restriction enforceable under nonbankruptcy law. *Patterson v. Shumate*, 504 U.S. at 758. This exclusion is narrow, as the exceptions listed in

-9-

§ 522(d)(1)(E) includes a broader set of exceptions, including stock payments, profitsharing, annuity, and other such accumulated interests reasonably necessary for the support of the debtor and dependants. *Id.* In *Patterson v. Shumate*, the Supreme Court expanded the coverage of § 541(c)(2) holding that the phrase "nonbankruptcy law" applied to both state and federal law, and that an ERISA approved pension plan containing an anti-alienation provision fell within its purview. *Id.* at 760.

Though the Court decided the issue by looking to the statute's plain meaning, it noted important policy justifications, including Congress's intent to protect benefits that an employee has worked for and counted upon. *Id.* at 764–65 *(quoting Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 375 (1980)).

Thus, under *Patterson*, the SPI is exempted from the estate only if it forms (1) a valid trust or plan, that (2) contains a restriction on transfer, that is (3) enforceable under state or federal nonbankruptcy law. *Id.* at 759. Even if met, the Ninth Circuit has instructed that § 541(c)(2) is permissive, not mandatory, and thus a debtor may relinquish his or her right to exclude property by failing to schedule it or failing to raise the issue before the bankruptcy court. *In re Rains*, 428 F.3d 893, 905–06 (9th Cir. 2005) (stating § 541(c)(2) is "permissive not

mandatory"); *In re Amerson*, 839 F.3d 1290, 1299 (10th Cir. 2016) (finding that the debtor's inclusion of property on her bankruptcy schedules and failure to argue for the application of § 541(c)(2) resulted in the interest becoming part of her bankruptcy estate.) The debtor bears the burden of demonstrating the exemption has been met. *In re Adams*, 302 B.R. 535, 540 (B.A.P. 6th Cir. 2003).

This Court is not persuaded that Appellants have met their burden to prove this exception applies. Undoubtably, the SPI's asset freeze places a restriction on funds held in the IOLTA trust. Undoubtably, the SPI is enforced under federal law, 15 U.S.C. § 53(b). Appellants's claim fails then on the first of § 541(c)(2)'s requirements: the SPI does not create a valid trust under state or federal law.

It is obvious, yet worth noting, that the SPI is not an ERISA approved pension plan. Nor is there any case law to support the contention that the SPI creates a trust under federal statute 15 U.S.C. § 53(b). Section 53(b) provides for temporary restraining orders and preliminary injunctions when the FTC has reason to believe that a person or entity is violating or about to violate any provision of law enforced by the FTC. There is nothing in the statute that discusses an intention to create a trust. By its terms § 53(b)(2) is limited to temporary relief in the form of a temporary restraining order or preliminary injunction.

Sherwood argues that the SPI is exempted from the estate because the FTC's complaint contains allegations that the proceeds were fraudulently obtained. However, the FTC's mere allegations do not carry the weight of a final judgment. In issuing the SPI, this Court determined that the FTC was likely to succeed in its action. However, this is not a final ruling on whether the funds were fraudulently obtained. Accordingly, the Bankruptcy Court retained jurisdiction. This Court specifically declined to take any stance on whether the funds were fraudulently obtained, and informed Sherwood of that at a hearing in response to Sann's request to modify the SPI. Sherwood acknowledge that the assets "wouldn't be property of the estate if the FTC prevailed." (Doc. 3 at 6–7.) At the time of the transfers, the FTC had not prevailed. This Court concludes the allegation of fraud did not deprive the Bankruptcy Court of jurisdiction.

Having examined the SPI, coupled with the absence of any authority that § 53(b) satisfies the requirements of § 541(c)(2) as instructed by *Patterson*, this Court concludes that the SPI does not create a valid trust under federal law, nor is there any justification for its exemption under federal law. Thus, the IOLTA funds are only exempt from the estate if the SPI creates a valid spendthrift trust under Montana law.

Spendthrift trust provisions are valid in Montana. *Lundgren v. Hoglund*, 711 P.2d 809, 810 (1985). The Montana Uniform Trust Code recognizes three valid ways to create a trust, and describes them in § 72–38–401. Of the prescribed methods, only subsection (2) is applicable here: a "declaration by the owner of property that the owner holds identifiable property as trustee." Montana Code Ann. § 72–38–401(2). The following statute, instructs the requirements for creation, which include intent to create a trust. Mont. Code Ann. § 72–38–402(2). Under Montana law, the party asserting the existence of a trust must prove so by "clear, unmistakable, satisfactory and convincing evidence." *New Hope Lutheran Ministry v. Faith Lutheran Church of Great Falls, Inc.*, 328 P.3d 586, 600 (2014).

Looking to the language in the SPI, there is nothing which can be reasonably interpreted as a declaration by Sann that he intends to hold the $648,352.20 in trust for himself or the FTC. There is even less evidence that the FTC consented to Sann's holding the property as a trustee on their behalf. Instead, the FTC made every attempt to limit Sann's exercise of control over his assets. In regards to Sherwood's holding the $648,352.20, the FTC explained "the funds are in Mr. Sherwood's account because the FTC insisted that they be deposited somewhere more secure . . . . But under the allowance provision, the carve-out from the asset freeze . . . Mr. Sann is allowed to withdraw funds from any account

that he owns or controls to cover his allowance but only to the extent of the allowance amount." (Doc. 4-25 at 41.)

The FTC continually sought to limit Sann's control over his assets by inserting itself in the bankruptcy proceedings. After Sann filed for bankruptcy in Nevada, it was the FTC who petitioned to move the case to the District of Montana where litigation in the FTC case was underway. It was also the FTC who petitioned the Bankruptcy Court to convert the case under Chapter 7, fearing the diminution of the estate by Sann's monthly draws and by diversion of funds used to pay attorney fees. The FTC was willing to stipulate to the modification of the asset freeze requested by Sann, so long as a trustee was appointed to administer the assets. This conduct does not suggest any intent to elect Sann as trustee, but rather to limit any exercise of his control over the assets. Accordingly, this Court cannot find that Sherwood has demonstrated the existence of a spendthrift trust under Montana law by "clear, unmistakable, satisfactory and convincing evidence."

Consequently, Appellant's argument that the $53,532 is excluded from the estate under § 541(c)(2) is without merit. Having so decided, there is no reason for the Court to determine whether Sann waived his right by failing to exempt the IOLTA funds on his amended bankruptcy schedules.

-14-

## II.    Equitable Relief Under Double Recovery

Next, the Court is asked to consider whether the Trustee's adversary action

against Appellants for $53,532 constitutes more than a "single satisfaction" under

11 U.S.C. § 550(c). Double recovery occurs when a trustee attempts to recover the

same asset twice. *In re Newman*, 487 B.R. 193, 201 (B.A.P. 9th Cir. 2013).

Though the Trustee argues that there are no equitable defenses to a trustee's

demand for turnover other than those enumerated in § 542(a)[3], Ninth Circuit dicta

in *Newman* left open the possibility that a debtor could seek refuge in a defense of

double recovery. *Id.* ("If a trustee sought a double recovery, the party from whom

the second recovery was sought could raise as an equitable defense to turnover

that the bank account constituted effectively a single asset, and the trustee should

not be able to recover the same asset twice.")

Taking this guidance, the Court will examine whether the Appellants are

entitled to an equitable defense of double recovery. The Court concludes that (1)

Appellants remain liable to pay the trustee $53,532 and this is not a double

recovery, and (2) the Bankruptcy Court did not abuse its discretion by deciding

---

[3] The Trustee cites *Helms v. Roti (In re Roti)*, 271 B.R. 281, 292 (Bankr. N.D. Ill. 2002); *Boyer v. Davis (In re U.S.A. Diversified Prod., Inc.)*, 193 B.R. 868, 879 (Bankr. N.D. Ill. 1995) ("[I]f an entity in possession of estate property receives notice of the bankruptcy filing but nonetheless transfer the property to an entity other than the trustee, it does so at its peril.")

that Appellants had not exhibited sufficient equity to warrant relief from the Bankruptcy Court.

## A.  Appellants are liable for $53,532

Section 542(a) permits a trustee to demand the turnover of funds held by someone other than the debtor or to "account for . . . the value of such property unless the property is of inconsequential value or benefit to the estate." *Id.* The Ninth Circuit determined that this section permits a trustee to seek recovery of estate property "against everyone who may have had control over property of the estate at some point after the petition was filed." *In re Newman*, 487 B.R. at 199. The Court reasoned that to restrict recovery only to property currently possessed would allow "the possessor of property of the debtor [to] thwart the demand simply by transferring the property to someone else." *Id.* at 199–20. Section 542(a) permits the trustee to demand turnover of all funds held in the debtor's account as of the date of conversion.

In *Newman*, the Ninth Circuit adopted the holding of an unpublished court opinion in deciding that a trustee is not relieved of liability because funds are no longer accessible. *Id.* at 200 (*citing to Rynda v. Thompsen (In re Rynda)*, 2012 WL 603657, at *3 (B.A.P. 9th Jan. 30, 2012)). The debtor claimed she could not comply with the trustee's turnover demand because she had already spent her tax

return. *Rynda*, 2012 WL 603657, at *3. On appeal, the Ninth Circuit determined that her statutory obligation "to deliver to the trustee and account for such property or its value [remained]. . . . [This] requirement was not waived because the debtor no longer possessed the property." *Id.* at 200.

Following *Newman*, this Court concludes that Appellants are not relieved of the responsibility to turn over demanded funds. Their liability extends to compensate the trustee for the full amount demanded; in this case, $541,288, the amount left in the account at the date of conversion. *Whiting Pools*, 462 U.S. at 204–06 (concluding that a debtor is required to deliver to the Trustee all property possessed at the time of conversion to a Chapter 7 proceeding).

Appellants argue that they are absolved of responsibility to turn over any additional funds, because Sann's previous payment of $80,248.75 contains the missing $53,532. They urge the Court to apply tracing methods to determine whether the money recovered by the Trustee included the outstanding balance.

The Court does not agree that the $80,248.75 necessarily contained the missing $53,532, nor that applying tracing methods to account 6474 concludes the issue favorable for Appellants. On his bankruptcy schedules Sann listed numerous checking accounts, including accounts ending in 6474, 7212, 7204, 4740, 1045, 7818, 1045, 5789, 3847, 7809, 1031 and 6505. Account 6474 was used as the

primary account for personal monthly expenses, and Sann deposited the monthly draws into this account. Terry Sann testified that in mid-July she used money in account 6474 to catch up on mortgage payments. On August 4, 2015 the Trustee had still not received the remaining assets as of conversion, and sent a demand specifying the amounts owed by account. In total, the Trustee requested:

1.    $78,400.00 from the IRS tax refund;
2.    $38,269.53 from the DIP account;
3.    $626.05 from Account 6474;
4.    $10,510.92 from Account 1045;
5.    $48, 580.74 from Account 7212;
6.    $50,145.23 from the Euro Pacific Account;
7.    The funds held in Account Nos. 7818, 6505, 5789. 3847, 7809 and 1031 as of the date of conversion (April 29, 2015).
8.    $53,532.00, which consists of three months or draws (May, June and July) taken from the Sherwood IOLTA Trust Account, post-petition, which funds are property of the bankruptcy estate.

(Doc. 4-59 at 3–4.)

Only $626.05 was requested from account 6474. On August 3 and 12, Sann made several transfers into account 6474 from other accounts, totaling $34,980.49. Additionally, money from a tax return was deposited into 6474. On August 12, Sann transferred $10,000 from 6474 into 7204. On August 13, Sann complied with the demand in part, wiring $80,248.75 from account 6474. The Trustee credited that transfer against the amounts for which she had demanded, including

-18-

account numbers ending in 6474, 1045, 7212, and 4740. When asked how she credited the monies, she said in accordance with her duties to maximize allocations to the creditors.

When Appellants applied tracing principals to demonstrate that the $80,248.75 contained the $53,532.00, they only traced money into account 6474. This approach is misleading. In the months after the date of conversion, Sann freely transferred money across the accounts. While the Trustee was entitled to, and demanded roughly $226,532.47, she received only $80,248.75. Though the payment originated from 6474, she had demanded only $624.05 from that account, and used the funds to credit the others.

Appellants argue that simple math necessitates the conclusion that the August 12 transfer included the $53,532 because the money withdrawn from 6474 is less than the amount transferred by Sherwood. Appellants cite *In re Belmont*, claiming the case instructs that double recovery is not analyzed vis-a-vis the total amount collected, but rather by asking whether the funds transferred by Sherwood were recovered by the Trustee. 551 B.R. 723 (Bankr. E.D.N.Y. 2016).

"It is well settled that until finally paid, litigants may look to multiple parties to recover the same loss." *Id.* at 732. Appellants's reliance on *Belmonte* is inapposite. In *Belmonte*, the trustee of a Chapter 7 estate brought an adversary

-19-

action against the defendants who received $250,000 after the debtor's post-conversion transfer of estate property. *Id.* at 725. The debtors took out a second mortgage on their home and used the proceeds to pay the defendants. *Id.* at 731. The court decided that there was no evidence of double recovery, even though the trustee had successfully avoided the second mortgage, because the trustee had not yet recovered $250,000. *Id.* at 732.

Similarly, this Court concludes that there is no evidence of double recovery, because the Trustee has not yet fulfilled a single recovery of the assets demanded.

## B. The Bankruptcy Court did not abuse its discretion by finding Sherwood ineligible for equitable relief

The Bankruptcy Court determined that its equitable powers must yield to express statutory commands. *Law v. Siegel*, __ U.S. __, 134 S.Ct. 1188, 1194–1195 (2014); *San Rafael Baking Co. v. N. Cal. Bakery Drivers Sec. Fund (In re San Rafael Baking Co.)*, 219 B.R. 860, 866 (B.A.P. 9th 1998) (stating "bankruptcy courts are courts of equity but must follow the law and cannot ignore express statutory commands.") Notwithstanding that the Bankruptcy Court determined § 542(a) an express statutory command, the Bankruptcy Court further concluded that Sherwood failed to demonstrate sufficient equity to warrant the

-20-

Bankruptcy Court's relief. "He who seeks equity must do equity." *Gardenhire v. Comm'r (In re Gardenhire)*, 20 F.3d 1145, 1152, n.11 (9th Cir. 2000).

When reviewing a bankruptcy court's denial of equitable relief, the court will reverse only upon finding arbitrary or capricious reasoning. *Pankratz Lumber Co. v. F.E.R.C.*, 824 F.2d 774, 780 (9th Cir. 1987). This Court does not find the Bankruptcy Court abused its discretion.

The Bankruptcy Court decided that Sherwood had failed to heed the warnings of the Trustee, the FTC and Sann's other bankruptcy attorneys, instructing him to discontinue the monthly draws. Appellants argue this finding was erroneous, and that Sherwood ceased the transfers as soon as the Bankruptcy Court instructed him to do so.

This Court is unpersuaded and concludes that any confusion regarding the status of the monthly draws should have been resolved at least prior to the June transfer. On April 29, the Bankruptcy Court converted the case under Chapter 7 and assigned Brandon as the trustee. On May 1, the Trustee sent Sherwood notice of conversion, which he did not receive until May 5. In addition to representing Sann in the FTC defense, Sherwood was also appointed as bankruptcy counsel.

Sherwood stated he did not receive actual knowledge of conversion until May 5, as he had not signed up to receive electronic notice. He did not open the

Trustee's letter right away because he was "busy with other matters." (Doc. 3 at 9.) Sherwood also stated he was unfamiliar with bankruptcy law at the time of conversion. Sherwood issued the monthly draw on May 1. When he received notice of the conversion on May 5 he did not attempt to stop payment. This check was not deposited until May 29.

In mid-May, the Trustee filed a motion in the FTC action to be substituted in place of Sann for all matters implicating the estate property, based on her status after the Chapter 7 conversion. Sherwood was Sann's attorney in the FTC action as well. The FTC wrote a memorandum of law and filed it with this Court, writing that "all of debtor's frozen assets are property of the estate, and that the debtor had no authority to use estate property." (Doc. 3 at 10.) Yet, Sherwood asserts that he continued the transfers through June and July because he needed the FTC's consent before he would disregard the SPI.

Also in mid-May, Sann's Nevada bankruptcy attorney copied Sherwood in an email discussing strategy in light of the Trustee's turnover demand. Schwartz thought they should try to argue for a carve-out from the frozen trust funds for Sann's defense in the FTC action, with the balance going to the estate. "Otherwise, I do not believe there is a basis to object to the Chapter 7 trustee holding the

funds." *Id.* Sherwood asserts this email did not provide notice to discontinue the transfers because he was merely copied in the email and it was not directed to him.

After the May transfer, Sherwood made two further transfers to Sann. He stated that he discussed his options with various counsel and did an "intense amount of research." (Doc. 3 at 11.) From this, he concluded that it would be acceptable to continue the transfer and wait to see what the court did. He stated that he feared this Court might hold him in contempt if he failed to comply with the SPI. He stated that as of June he began to have concern that the Debtor might get into trouble for holding the monthly draws, but he had no sense that he himself might be held responsible. Sherwood made an ill-informed decision to "wait and see" instead of seeking clarification by interpleading.

For these reasons, This Court concludes that the Bankruptcy Court did not abuse its discretion by finding Sherwood's actions did not warrant equitable relief.

## CONCLUSION

Upon a de novo review of the Bankruptcy Court's legal conclusions, the Court determines that the Bankruptcy Court's order awarding judgment in favor of Trustee Christy L. Brandon, and against Michael J. Sherwood and Michael J. Sherwood, P.C. for the sum of $53,532.00 was based on legal grounds within the contemplation of the Bankruptcy Code and on factual findings that are not clearly

erroneous. Further, the Bankruptcy Court did not abuse its discretion by failing to award equitable relief based on factual findings that are neither arbitrary nor capricious.

IT IS ORDERED that the Bankruptcy Court's Order awarding judgment in favor of Trustee Christy L. Brandon, and against Michael J. Sherwood, and Michael J. Sherwood, P.C. for the sum of $53,532.00 is AFFIRMED.

IT IS FURTHER ORDERED that the Bankruptcy Court's judgment is AFFIRMED in all other respects.

DATED this 17th day of October, 2017.

Dana L. Christensen, Chief Judge
United States District Court